# IN THE UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Native American Services Corp., a Montana Corporation

      Plaintiff,

v.

Construction Management Specialists, LLC, a Colorado Limited Liability Company, and Jim Spruill, an individual,

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

NICHOLAS D. KOVARIK
RYAN D. YAHNE
PISKEL YAHNE KOVARIK, PLLC
522 W Riverside Avenue, Ste. 700
Spokane, WA 99201
Telephone: (509) 321-5930
FAX: (509) 321-5935
nick@pyklawyers.com
ryan@pyklawyers.com
Attorneys for Native American Services
Corporation

Plaintiff Native American Services Corp. ("NASCO"), by and through its attorneys of record, Piskel Yahne Kovarik, PLLC, hereby alleges as follows:

## I. JURISDICTION, VENUE AND PARTIES

1. Plaintiff NASCO is a Montana corporation with its principal place of business in Kellogg, Idaho. NASCO is a licensed, registered and bonded contractor and has done all things necessary to maintain this action.

2. Defendant Construction Management Specialists, LLC ("CMS") is a Colorado limited liability company with is principal place of business in Colorado Springs, Colorado.

3. Defendant Jim Spruill is a Colorado resident who fraudulently and willfully converted NASCO's money. Such fraudulent and willful conversion occurred in Colorado.

4. NASCO and CMS entered into a contract whereby CMS would provide a pre-engineered metal building, insulated panels and standing seam roof for the Flight Simulator Facility Project at Butts Field, Fort Carson, Colorado (the "Project").

5. NASCO was responsible for the assembly of the building,

panels and standing seam roof, pursuant to its contract with the prime contractor Mirador Enterprises ("Prime"). Mirador Enterprises contracted directly with the owner, United States Army Corps of Engineers, Omaha District ("Owner").

6. NASCO has incurred damages far in excess of $75,000.

7. Jurisdiction and venue are proper in this Court.

## II. <u>FACTS</u>

8. NASCO re-alleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

9. On or about June 23, 2014, CMS sent NASCO a proposal letter. This letter set forth CMS's proposed price for the scope of work, per the plans and specifications for the Project.

10. On or about July 21, 2014, the Prime was awarded the contract for the Project.

11. On or about August 1, 2014, the Prime and NASCO entered into a subcontract for the Project.

12. On or about October 3, 2014, NASCO accepted CMS's proposal and sent CMS a Vendor Purchase Agreement (the "Agreement"). This Agreement provided that CMS would perform the work and deliver the

components, and in return would be paid a total of $581,526.

13.    NASCO advanced CMS a total of $326,137 as a deposit and progress payments for the work, including monies intended for payment to Nucor Building Systems ("Nucor"), Kingspan Insulated Panels, Inc. ("Kingspan") and other subcontractors and suppliers so that the work could begin pursuant to the Agreement.

14.    CMS and Jim Spruill represented that it had contracted with Nucor and Kingspan to fabricate the building and such fabrication was underway.

15.    Specifically, Jim Spruill represented that he had paid Nucor the money he had received from NASCO in order for Nucor to begin work on the Project.   This representation was false.   Jim Spruill knew the representation was false.   Mr. Spruill made this representation to induce NASCO to pay him more money as progress payments and to cover up the fact that he had not paid Nucor for the Project.

16.    For example, Mr. Spruill represented to NASCO on or about December 28, 2015 that it had paid Nucor $100,000 towards the Project. He provided a check to NASCO which, on its face, purported to be a check to Nucor in the amount of $100,000 and in the memo line stated "Flight

Simulator- U14L0504A."       However, at the time he made this representation (on or about December 28, 2015), Mr. Spruill knew that he had separately corresponded with Nucor on or about August 5, 2015 and again on or about November 25, 2015 wherein Mr. Spruill directed Nucor to apply the funds from this check to the "Preferred Preowned" and "3 Boys Liquor" projects respectively.  The "Preferred Preowned" and "3 Boys Liquor" projects were other projects CMS had with Nucor that did not involve or relate in anyway to the Project or NASCO.

17.    Mr. Spruill knew that he never "re-paid" the Project and such misrepresentations were made to NASCO to induce it to act.  In fact, NASCO justifiably and reasonably relied upon Mr. Spruill's intentional and negligent misrepresentations to its detriment in an amount to be proven at trial.

18.    During December 2015, NASCO became extremely concerned that CMS was not performing as agreed.

19.    Specifically, CMS failed to deliver the pre-fabricated building to the Project site timely and completely missed the deadline set forth in the Project documents and the Vendor Purchase Agreement.

20.    In fact, CMS had failed to even begin fabrication and

completely failed to perform under the Agreement. Such failure to perform constitutes a material breach of contract, which directly and proximately caused NASCO damages.

21.   On or about December 17, 2015, NASCO sent CMS a deficiency letter.

22.   On or about December 22, 2015, CMS purportedly responded to NASCO's letter, however it did not cure its deficiency.

23.   On or about January 7, 2016, NASCO issued CMS a Notice of Default and later on January 27, 2016 terminated CMS's contract.

24.   In an effort to mitigate its damages, NASCO began negotiating with Nucor and Kingspan to perform the work CMS had purportedly paid Nucor and Kingspan to perform. During those negotiations, it was discovered that Defendant Spruill converted at least part of NASCO's deposit and progress payments to his own benefit by directing Nucor to apply NASCO's payments to other projects.

25.   Further, Defendant Spruill repeatedly, and consistently and intentionally made misrepresentations of material fact to NASCO.

26.   NASCO was able to reach an agreement with Nucor for the fabrication of the building. NASCO was forced to pay an additional

$458,233 to Nucor to perform the work.

27.   NASCO was able to reach an agreement with Kingspan for the fabrication of the building.   NASCO was forced to pay an additional $113,397 to Kingspan to perform the work.

28.   CMS and Mr. Spruill had damaged NASCO in the amount of $355,241, plus interest, attorney fees and costs.

29.   On December 9, 2016, the above captioned parties reached a settlement agreement (the "Agreement") attached hereto as **Exhibit "A."**

30.   CMS and Mr. Spruill, individually, were to pay a sum of Fifty Thousand Dollars ($50,000.00) in accordance with the terms of the Agreement in return for a mutual release of all claims set forth in the Complaint.

31.   Once the Agreement was reached, NASCO dismissed all claims and causes of action against CMS and Mr. Spruill WITHOUT PREJUDICE.

32.   Since that date, CMS and Mr. Spruill have failed to make payments in accordance with the terms of the Agreement and have failed to cure their breach of the Agreement.

33.   As expressed in the Agreement, if Mr. Spruill or CMS fail to cure any breach of the Agreement then:

> NASCO may take any and all action-including, but
> not limited to, legal action-to recover any and all
> amounts and damages to which it asserts to be
> entitled under law and in equity including, but not
> limited to, the following: any and all claims and
> causes of action arising out of or related to the
> subject matter of [this] Action; any and all claims
> and causes of action advanced in [this] Action.

34.   NASCO now reasserts the claims listed below against CMS and

Mr. Spruill.

### III.  **CAUSES OF ACTION**

### **First Cause of Action**
### **(Breach of Contract- CMS)**

35.   NASCO re-alleges the preceding paragraphs and incorporates

them by reference as though fully set forth herein.

36.   CMS and NASCO entered into a contract for the performance

of work on the Project.

37.   CMS breached the express and implied obligations of the

contract, including the implied covenant of good faith and fair dealing, by

failing to pay its suppliers, converting funds, not meeting the Project

schedule and other transgressions.

38.   Such material breach of contract has directly and proximately

caused NASCO damages in an amount to be proven at trial, plus interest,

attorney fees and costs.

## Second Cause of Action
### (Breach of the Implied Covenant of Good Faith and Fair Dealing- CMS)

39.   NASCO re-alleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

40.   Inherent in the contract between NASCO and CMS is the implied covenant of good faith and fair dealing.

41.   CMS breached this implied covenant by its conduct.

42.   Such breach has directly and proximately caused NASCO damages in an amount to be proven at trial, plus interest, attorney fees and costs.

## Third Cause of Action
### (Conversion- Spruill)

43.   NASCO re-alleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

44.   Defendant Spruill exercised an unauthorized act of dominion and/or ownership over personal property and money belonging to NASCO.

45.   Such tortious conduct has deprived NASCO of the value of its property and has directly and proximately caused NASCO damages in an amount to be proven at trial, plus interest, attorney fees and costs.

46.   Defendant Spruill is personally liable for his tortious conduct in converting NASCO funds by diverting those funds from their intended purpose and using them to pay CMS' general obligations.

## Fourth Cause of Action
### (Fraud - Spruill)

47.   NASCO re-alleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

48.   Defendant Spruill personally made false representations of material fact about the payment of subcontractors, status of the Project and use of and location of NASCO funds.

49.   Defendant Spruill knew the representations were false.

50.   NASCO did not know the representations were false.

51.   Defendant Spruill intended NASCO to act upon the false representations, and in fact NASCO did act upon and rely upon those false representations thereby directly and proximately causing NASCO damages in an amount to be proven at trial, plus interest, attorney fees and costs.

## Fifth Cause of Action
### (Negligent Misrepresentation- Spruill)

52.   NASCO re-alleges the preceding paragraphs and incorporates them by reference as though fully set forth herein.

53.   Defendant Spruill, individually and in the course of his business, profession or employment made a misrepresentation of material fact without reasonable care.

54.   This misrepresentation was made to NASCO for its guidance in NASCO's business transactions.

55.   Defendant Spruill had knowledge that these misrepresentations would be relied upon by NASCO and NASCO in fact reasonably and justifiably relied upon Defendant Spruill's misrepresentations to NASCO's detriment.

56.   Such reasonable and justifiable reliance has directly and proximately caused NASCO damages in an amount to be proven at trial, plus interest, attorney fees and costs.

## IV.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Native American Services Corp. prays for the following relief against Defendant Construction Management Specialists, LLC and Defendant Jim Spruill, jointly and severally:

1.   For damages to be proven at trial;

2.   For pre-judgment and post-judgment interest pursuant to applicable law;

3.     For attorney fees and costs pursuant to contract, and other applicable law; and

4.     For further relief the Court deems just and equitable.

FURTHERMORE, PURSUANT TO FRCP 38 AND 81, NASCO HEREBY DEMANDS A JURY.

DATED this 7th day of March 2018.

PISKEL YAHNE KOVARIK, PLLC

By: _____
NICHOLAS D. KOVARIK
RYAN D. YAHNE
PISKEL YAHNE KOVARIK, PLLC
522 W Riverside Avenue, Ste. 410
Spokane, WA 99201
Telephone: (509) 321-5930
FAX: (509) 321-5935
nick@pyklawyers.com
ryan@pyklawyers.com
Attorneys for Native American Services
Corporation

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The parties to this Settlement Agreement and Mutual Release ("Agreement") are Native American Services Corp., a Montana Corporation ("NASCO"), on the one hand, and Jim Spruill, an individual ("SPRUILL"), and Construction Management Specialists, LLC, a Colorado limited liability company, on the other hand ("CMS"). NASCO, SPRUILL, and CMS are collectively referred to as the "Parties."

WHEREAS, NASCO, as Plaintiff, and SPRUILL and CMS, as Defendants, were parties to a lawsuit that was pending before the United States District Court for the District of Colorado, assigned Case No. 1:16-cv-00846-JLK, and which was dismissed without prejudice ("Action"); and

WHEREAS, the Parties desire to settle any and all disputes between each other including those that arise out of or relate to the Action;

THEREFORE, in consideration of the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     Settlement Payment. SPRUILL and CMS shall pay to NASCO the sum of Fifty Thousand Dollars ($50,000.00), as set forth below ("Payment Sum"). The Payment Sum shall be made as follows. By not later than December 10, 2016, SPRUILL and CMS shall make a payment in the sum of Ten Thousand Dollars ($10,000.00) to NASCO ("Initial Partial Payment"). SPRUILL and CMS shall cause the Initial Partial Payment to be made by ~~electronic transfer~~ BANK CHECK into the trust account of Piskel Yahne Kovarik, PLLC. SPRUILL and CMS authorize Piskel Yahne Kovarik, PLLC to disburse from the trust account of Piskel Yahne Kovarik, PLLC to NASCO any and all funds comprising the Initial Partial Payment that SPRUILL or CMS transfers into such

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 1

account. The transfer of the Initial Partial Payment must be completed, and the Initial Partial Payment must be received, by not later than December 10, 2016. Furthermore, by not later than December 10, 2016, SPRUILL and CMS shall properly execute and shall deliver to NASCO the Promissory Note that is attached hereto at **Appendix A** and that is incorporated herein by this reference ("Promissory Note"). Time is of the essence. In addition to the Initial Partial Payment, SPRUILL and CMS promise and agree to pay to NASCO the amount of $40,000.00 in accordance with the Promissory Note appended hereto at **Appendix A** including, without limitation, the Payment Schedule appended to the Promissory Note.

2. <u>Release of NASCO.</u> SPRUILL and CMS hereby release, acquit, and forever discharge NASCO and its respective affiliates, officers, directors, partners, shareholders, members, employees, agents, representatives, attorneys, predecessors, successors, assigns, any surviving companies or entities by reason of any merger or acquisition, and all persons acting by, through, under or in concert with any of them from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, damages, demands, losses, costs and expenses (including attorney fees) of any kind, character or nature whatsoever, direct, indirect or by way of contribution and indemnity, fixed or contingent, whether known or unknown, that they may have against it, including but not limited to those which arise out of or relate to the subject matter of the Action or were alleged therein. SPRUILL warrants that he has no claims against NASCO other than those being released herein. CMS warrants that it has no claims against NASCO other than those being released herein.

3. <u>Release of SPRUILL and CMS.</u> Subject to the following, NASCO releases, acquits, and forever discharges SPRUILL and CMS and each of their respective

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 2

affiliates, officers, directors, partners, shareholders, members, employees, agents, representatives, attorneys, predecessors, successors, assigns, any surviving companies or entities by reason of any merger or acquisition, and all persons acting by, through, under or in concert with any of them from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, damages, demands, losses, costs and expenses (including attorney fees) of any kind, character or nature whatsoever, direct, indirect or by way of contribution and indemnity, fixed or contingent, whether known or unknown, that it may have against SPRUILL and CMS, including but not limited to those which arise out of or relate to the subject matter of the Action or were alleged therein: the release of SPRUILL and CMS as set forth in this paragraph is expressly conditioned upon payment in full of the Payment Sum in accordance with this Agreement, subject to the opportunity to cure as provided in this Agreement—including, but not limited to, Paragraph 1 hereof—and in accordance with the terms and conditions of the Promissory Note executed in connection with this Agreement, including, without limitation, all payments properly made thereunder, subject to the opportunity to cure as to as set forth in the Promissory Note.  The date of the occurrence of the release of SPRUILL and CMS as provided under this Agreement, generally, and this paragraph, specifically, shall be referred to as the "Date of Release of SPRUILL and CMS."  Upon the Date of Release of SPRUILL and CMS, any and all agreements, except this Agreement and except the Promissory Note executed in connection with this Agreement, between NASCO and SPRUILL and between NASCO and CMS shall be terminated and the termination of such agreements shall contemporaneously operate to also terminate the Parties' duties and obligations arising out of such agreements.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 3

4.   <u>Additional Documents.</u>   The Parties agree to execute such additional documents as reasonably may be necessary to carry out the terms of this Agreement.

5.   <u>Breach of Agreement.</u>   The occurrence of any of the following, without limitation, shall be a material breach of the Agreement: (a) failure by SPRUILL or by CMS to perform or satisfy any of the terms and conditions of this Agreement including, specifically, but without limitation, failure to pay the Payment Sum as set forth in this Agreement; and (b) an Event of Default by SPRUILL or by CMS under the Promissory Note, executed and delivered in connection with this Agreement.

6.   <u>Opportunity to Cure; NASCO's Rights and Remedies upon Breach and Failure to Cure.</u>   If SPRUILL or CMS fail to cure any breach of the Agreement on or before ten (10) days after Written Notice to them of such breach of the Agreement, then NASCO may, at its option, demand and declare all sums owing under the Promissory Note and under this Agreement to be immediately due and payable, in addition to any other rights or remedies of NASCO under applicable law.   Furthermore, if SPRUILL or CMS fail to cure any breach of the Agreement on or before ten (10) days after Written Notice to them of such breach of the Agreement, then NASCO may take any and all action—including, but not limited to, legal action—to recover any and all amounts and damages to which it asserts to be entitled under law and in equity including, but not limited to, the following: any and all claims and causes of action arising out of or related to the subject matter of the Action; any and all claims and causes of action advanced in the Action; and any and all claims and causes of action arising out of or related to the breach or default of this Agreement and the breach or default of the Promissory Note executed in connection herewith.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 4

7. **Tolling of Limitations Period; Waiver of any Defense of Statute of Limitations.** Any and all statutes of limitation and repose and any and all other time limitations to commencing an action applicable to any and all claims or causes of action held by NASCO against SPURILL and any and all statutes of limitation and repose and any and all other time limitations to commencing an action applicable to any and all claims or causes of action held by NASCO against CMS—including, but not limited to, any and all claims or causes of action that arise out of or that relate to the Action—are prospectively tolled and suspended from the Effective Date of this Agreement until the Date of Release of SPRUILL and CMS.  SPRUILL hereby knowingly and voluntarily relinquishes and waives any defense of the statute of limitations and repose and any and all other time limitation to commencing an action applicable to any and all claims or causes of action held by NASCO against SPRUILL for the time accruing from the Effective Date to the Date of Release of SPRUILL and CMS.  CMS hereby knowingly and voluntarily relinquishes and waives any defenses of the statute of limitations and repose and any and all other time limitations to commencing an action applicable to any and all claims or causes of action held by NASCO against CMS for the time accruing from the Effective Date to the Date of Release of SPRUILL and CMS. Accordingly, the time period between the Effective Date of this Agreement until the Date of Release of SPRUILL and CMS shall not be included in determining the amount of time that has accrued for purposes of any statute of limitations and repose and any and all other time limitations to commencing an action against SPRUILL and against CMS.  SPRUILL and CMS understand and acknowledge that, in entering into this Agreement, NASCO is expressly relying on this paragraph.

**NATIVE AMERICAN SERVICES CORP.**          **JIM SPRUILL**

By: Rick L. Luna

Its: President & CEO

**CONSTRUCTION MANAGEMENT SPECIALISTS, LLC**

By: _____

Its: PRESIDENT

    8.    <u>Non-Disparagement.</u> The Parties acknowledge and agree that they will not make any disparaging communications, whether oral, written or electronic, concerning any other of the Parties.

    9.    <u>Waiver.</u> No failure or delay by NASCO in exercising its rights or remedies under this Agreement shall be a waiver of such rights. The rights and remedies of NASCO under this Agreement are cumulative and without prejudice to any further or additional rights of NASCO under law and in equity.

    10.    <u>Successors and Assigns; Third Parties.</u> All terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the persons and entities identified above, their successors, and assigns. This Agreement is solely for the benefit of the Parties signatory hereto, and shall not create rights in any third parties.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 6

11.  _Severability_.  If any clause or any other portion of this Agreement shall be determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other clause or portion of this Agreement, all of which clauses or portions shall remain in full force and effect.

12.  _Written Notice Defined; Day Defined_.  The term "Written Notice" shall mean notice in writing and delivered by Certified Mail, Return Receipt Requested. Written Notice shall be effective upon mailing by Certified Mail, Return Receipt Requested, addressed as follows:

Notice to SPRUILL shall be addressed to:_____

_____

Notice to CMS shall be addressed to: _____

_____

Notice to NASCO shall be addressed to: _____

_____

The term "Day" as used in this Agreement shall mean a calendar day.

13.  _Entire Agreement._  This Agreement and the Promissory Note executed in connection herewith represents the Parties' final and entire agreement and supersedes all prior or contemporaneous oral or written agreements or communications regarding the subject matter hereof.  There are no promises, terms, representations or conditions other than those contained herein and those contained in the Promissory Note executed in connection herewith.  This Agreement shall not be modified except in writing signed by the party against whom the modification is asserted.  This Agreement does not modify or affect the terms of the Promissory Note executed in connection herewith.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 7

14.     Governing Law, Jurisdiction, and Venue. Any disputes arising out of or relating to the formation, interpretation, performance or enforcement of this Agreement shall be governed by the laws of the State of Idaho.  Venue for any such disputes shall be the Idaho District Court, First Judicial District, Shoshone County, Idaho.  SPRUILL consents to the jurisdiction of the courts of the state of Idaho.  CMS consents to the jurisdiction of the Courts of the state of Idaho.

15.     Attorney's Fees and Costs. In the event either party takes action to enforce the terms of this Agreement or a dispute arises regarding its terms, the prevailing party shall be entitled to recover reasonable attorney fees and costs.

16.     Due Authorization. Each of the Parties hereby represents and warrants that the individual signing this Agreement is duly authorized to do so and each of the Parties hereby represents and warrants that they are fully competent to do so.

17.     Counterparts and Facsimile. This Agreement may be executed in several counterparts or by facsimile or email signature, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.

18.     Counsel.     Each of the Parties to this Agreement, by their signatures below, hereby agrees and acknowledges that they have read and that they fully understand this Agreement and that they have entered into this Agreement freely and voluntarily.   SPRUILL and CMS acknowledge and agree that they have had the opportunity to consult with an attorney regarding this Agreement.

19.     Effective Date. The Effective Date of this Agreement is the date on which the Agreement is signed by both SPRULL and CMS at the signature block set forth below.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 8

**NATIVE AMERICAN SERVICES CORP.**

Signature: _____

By: _____Rick L. Luna_____

Its: _____President & CEO_____

Date: _____12/9/16_____

**JIM SPRUILL**

Signature: _____

Print: _____Jim Spruill_____

Date: _____12/2/16_____

**CONSTRUCTION MANAGEMENT SPECIALISTS, LLC**

Signature: _____

By: _____Jim Spruill, Jr_____

Its: _____PRESIDENT_____

Date: _____12/2/16_____

SETTLEMENT AGREEMENT AND MUTUAL RELEASE - 9